UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                       )<br>)<br>4.    TREVON BELL,            )<br>     Defendant             ) | Cr. No. 22-10016-FDS |

GOVERNMENT'S SENTENCING MEMORANDUM

From August to November 2021, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Drug Enforcement Administration ("DEA") obtained a series of court orders to intercept the Snapchat account of a violent Boston gang member. From that account, agents discovered a group chat entitled "Gang Members Only." The chat featured numerous members of Boston-area gangs, including TREVON BELL, posting images and videos of themselves in possession of firearms (often several firearms). All of the defendants had prior firearm-related convictions or pending firearm offenses and all were under court supervision at the time they engaged in their criminal conduct. One by one, agents obtained search and arrest warrants for the defendants and arrested them in possession of additional firearms and narcotics.

Based on these seizures, a United States Grand Jury returned the above-captioned indictment charging the defendants with a series of firearm and drug trafficking offenses. On November 28, 2023, BELL pleaded guilty to Count Seven of the indictment, charging him with being a felon in possession of a firearm, without a plea agreement.

In the final version of the Pre-Sentence Report, dated June 3, 2024 ("PSR"), the United States Probation Office determined that BELL's base offense level ("BOL") was 26. Probation concluded that BELL was not entitled to a reduction for acceptance of responsibility because he continued his membership in Heath Street, a violent Boston gang, while held in pre-trial custody

on this case – a conclusion BELL does not contest. PSR, ¶¶ 30 & 42a.[1] Probation found that BELL's criminal history category ("CHC") was III, and thus BELL's applicable guideline sentencing range ("GSR") was 78-97 months in prison. PSR, ¶¶ 28, 38, 92.

This sentencing range, while substantial, is not sufficient to capture the seriousness of BELL's offense or his true criminal history. The government respectfully requests that this Court sentence BELL to 120 months in prison and three years of supervised release.

BELL's Offense. Agents determined the Snapchat account "jurassic_trot" belonged to BELL because he regularly posted images of himself on the account:



Agents were very familiar with BELL's dangerous firearm history. At the time BELL was intercepted, BELL was on pre-trial release from several firearm-related offenses (see Criminal History section below). As a result, BELL was ordered to remain at his approved residence, 79 Cottage Street in Lynn, except from 8:00 a.m. – 9:00 a.m. and 3:45 p.m. – 4:45 p.m. for child drop-off and pick-up, restrictions that were monitored in real time by a GPS bracelet.

---

[1] As is discussed more fully below, on February 7, 2024, BELL and several other individuals were charged with conspiracy to participate in a racketeering enterprise, in connection with their membership in the Heath Street gang. PSR, ¶ 42a.

2

On November 13, 2021, BELL posted a video on the gang rival group chat which showed him to be in possession of a black colored semi-automatic firearm with an extended magazine. According to the GPS bracelet BELL wore, at 5:27 p.m., the time of the Snapchat post, BELL was located at the South Shore Plaza in Braintree:



According to Suffolk Superior Court Probation, BELL had received court approval to be outside his residence from 1:00 p.m. – 7:00 p.m. for his son's birthday party that day.

On November 24, 2021, BELL posted a video to the group chat which showed him in possession of a black colored semi-automatic Glock model 43X 9 millimeter firearm. From the image, agents were able to identify the serial number on the gun: BPPL107.  The video captured BELL sitting on a bed, then rotated to show a black colored Glock semi-automatic firearm laying on the bed, then rotated back to show BELL's face.  BELL's electronic monitoring bracelet had him at the Lynn residence at 11:37 p.m., the time he posted the message on Snapchat:



On December 3, 2021, agents searched BELL's residence but found no firearms. Agents later learned that on December 1, 2021, officers with the Boston Police Department's Youth Violence Strike Force had arrested another Heath Street member in possession of the same gun BELL had posted about: a Glock 43X 9 millimeter pistol, bearing serial number BPPL107. Agents learned that the other Heath Street member was, like BELL, under court supervision monitored by a GPS bracelet, and determined he had traveled to BELL's residence five days after BELL posted about the gun and two days before he was arrested with it.

BELL's Criminal History and Probation's Guideline Calculations. BELL has been convicted on two occasions of assault and battery with a dangerous weapon, once with a handgun, see PSR, ¶ 35, and once with an automobile, though, as the incident report makes clear, BELL crashed his car into a police cruiser after he shot at someone from a subsequently recovered firearm. PSR, ¶ 36; see also Exhibit 1 (incident report). BELL has a juvenile delinquency adjudication for discharging a firearm within 500 feet of a building, see PSR, ¶ 34, and at the time he was intercepted had three pending unlawful possession of a firearm and / or ammunition cases in Suffolk Superior Court. PSR, ¶¶ 40, 41, 42.

Based on his two convictions for crimes of violence, Probation determined that BELL's base offense level was 24. USSG § 2K2.1(a)(2). PSR, ¶ 23. Probation assessed a two-level

4

increase because the firearm BELL possessed was stolen. USSG § 2K2.1(b)(4)(A). PSR, ¶ 24. The two ABDW convictions resulted in four criminal history points, placing BELL in CHC III. PSR, ¶¶ 35, 36, 37-38. Probation concluded that BELL was not entitled to a reduction for acceptance of responsibility because he continued to participate in a racketeering enterprise while in custody on this case. PSR, ¶¶ 30, 42a. As noted above, BELL does not contest Probation's denial of acceptance, but Probation's conclusion was clearly supported by the record in any event. Among other evidence, agents reviewed jail calls from BELL where he discussed obtaining funds for bail for incarcerated Heath Street members. Incredibly, from prison, BELL called in to the taping of a podcast conducted by a Heath Street member, where BELL announced that he would soon be released and ready to confront rivals. Probation correctly concluded that BELL continued to voluntarily associate with and promote the interests of a violent gang while in custody on this case and thus had not accepted responsibility. See USSG § 3E1.1, application note 1(B). With a TOL of 26 and a CHC of III, Probation found that BELL's applicable GSR was 78-97 months in prison. PSR, ¶ 92.

An Upward Departure is Warranted. In the addendum to the PSR, the government noted that in its view, BELL's open firearm cases meant that his criminal history was understated. The Court recently confronted similar issues in connection with the sentencing of co-defendant (and fellow Heath Street member) DUMARI SCARLETT-DIXON, who, like BELL, had several open state firearm offenses at the time he was arrested and sentenced.

BELL's case is easier. From the various PSRs prepared in this case, the Court will note that BELL routinely continued his open state firearm offenses so that they were scheduled after the sentencing hearing date in this case (which has also been moved several times at the request of defense counsel and Probation). Unlike SCARLETT-DIXON, the PSR notes that BELL's state

cases were actually scheduled for guilty plea hearing. Indeed, state prosecutors advised that there is an agreement in place for BELL to resolve his open state firearm offenses for concurrent 6 year sentences. See Exhibit 2 (discussing plea parameters). BELL's strategy is obvious: he wants to plead guilty to his open gun offenses after he is sentenced federally in order to ensure that he does not receive any additional criminal history points, which would drive up his applicable guideline range, and in the hopes that any state sentence will run concurrently with his federal sentence.

At some point, these machinations take on the quality of kabuki theater. In the spirit of United States v. Lopez, 52 F. Supp. 3d 354, 361 (D. Mass. 2014) and United States v. Marsh, 486 F. Supp. 2d 150, 159 (D. Mass. 2007) (Saylor, J.), which lamented the practice of vacating convictions in state court to avoid federal sentencing consequences, BELL's state court gun cases are not really open or unresolved and there is no reason for this Court to pretend that they are. BELL's three firearm offenses, properly treated as convictions-in-waiting, would generate 9 additional criminal history points even if the state sentencing judge imposed substantially shorter sentences than those set out above. That would have the effect of placing BELL in CHC VI and would produce a GSR of 120-150 months in prison.[2]

BELL was intercepted boasting about possessing firearms on a Snapchat group chat with rival Boston-area gang members. BELL's offense occurred while he was on house arrest for three other gun offenses and while wearing a GPS bracelet. On the day BELL asked his state probation officer for permission to remain outside his home to attend his minor son's birthday party, agents intercepted BELL posting an image of himself racking a firearm in a mall bathroom. While inside his home, BELL provided a firearm he posted about to a fellow gang member.

---

[2] The government does not make a similar upward departure argument with respect to BELL's new RICO conspiracy indictment. PSR, ¶ 42a. The RICO indictment was recently brought, is different in scope than the gun cases discussed above, and discovery is ongoing.

Virtually every entry on BELL's criminal record involves the possession or use of a firearm. Twice, BELL was convicted of acts of violence with firearms. This offense is BELL's fourth gun-related conviction – if the Court considers BELL's other pending state gun cases, this would be his <u>seventh</u> gun offense by the age of 27. All of these factors militate in favor of an above-guideline sentence. <u>See</u> <u>United States v. Politano</u>, 522 F.3d 69, 71-72 (1st Cir. 2008) (in sentencing defendant to above-guidelines sentence, judge decried the "epidemic of handgun violence in communities within this district" and noted that illegal firearms "directly facilitate crimes of violence" and "indirectly facilitate other crimes, including drug offenses").

<u>Conclusion</u>. In many cases, the PSR's 78-97 month sentencing guideline range would be considered a substantial sentence. BELL's offense and history call for more. BELL is a member of a violent Boston gang who regularly flouted court orders to acquire and use firearms, and in so doing endangered his rivals, himself, and his community. BELL has also manipulated – there really is no other word for it – his criminal history to make it appear less serious than it is.

The government's recommended sentence of 120 months in prison will specifically deter BELL, promote respect for the law, and most importantly, protect the public from BELL. It is a sentence which is sufficient, but not greater than necessary, to achieve the goals of sentencing. <u>See</u> 18 U.S.C. § 3553(a). As a special condition of supervised release, the government requests that BELL be ordered not to contact other Heath Street gang members and bar him from entering the Bromley-Heath housing development during his period of supervised release.

        Respectfully submitted,

        JOSHUA S. LEVY
        Acting United States Attorney

By:    <u>/s/ Christopher Pohl</u>
        Christopher Pohl
        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 4, 2024.

/s/ Christopher Pohl
Christopher Pohl
Assistant U.S. Attorney